ESTATE OF JOHN J. CORNWELL, DECEASED, SALLIE C. AILES, ADMINISTRATRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 69458.   Filed January 15, 1962.

*William C. Hill, Esq.*, for the petitioner.
*Bart A. Brown, Jr., Esq.*, for the respondent.

#### OPINION.

MULRONEY, *Judge:* The respondent determined a deficiency in estate tax in the Estate of John J. Cornwell in the amount of $5,384.14.

The only question is whether the proceeds of certain life insurance policies qualify for marital deduction under section 812(e)(1)(G), I.R.C. 1939.[1]

All of the facts have been stipulated and are accordingly so found.

Sallie C. Ailes is administratrix of the Estate of John J. Cornwell, Deceased, who died on September 8, 1953, a resident of Romney, West Virginia.

On November 29, 1954, the administratrix filed with the district director of internal revenue at Parkersburg, West Virginia, a Federal estate tax return for the Estate of John J. Cornwell, Deceased, and paid the tax of $6,951.74 shown on this return.

At the time of decedent's death, his life was insured by various policies of life insurance, three of which were issued by the Equitable Life Assurance Society of the United States. Each policy provided "The Equitable Life Assurance Society Of The United States hereby insures the life of _____ John J. Cornwell _____ and agrees to pay at its Home Office in the City of New York [_____ the face amount of the policy _____] to _____ [beneficiary _____] upon receipt of due proof of the death of the Insured, provided premiums have been duly paid and this policy is then in

---

[1] All section references are to the Internal Revenue Code of 1939, as amended.

force and is then surrendered properly released." The beneficiary of these Equitable policies was Edna B. Cornwell, surviving spouse of the deceased. These policies can be summarized as follows:

| Policy No. | Face amount | Value at date of death |
|---|---|---|
| 9,163,722 | $10,000 | $10,072.00 |
| 9,377,675 | 5,000 | 5,153.80 |
| 2,518,331 | 5,000 | 5,110.15 |

On March 3, 1941, the decedent elected the same beneficiary provision for each of the above-mentioned policies. This beneficiary provision was in effect with respect to each policy at the time of decedent's death. This beneficiary provision provided, as follows:

BENEFICIARY PROVISION:

1. Settlement of the net sum due under this policy by reason of the death of the Insured shall be made with the Insured's wife, EDNA B. CORNWELL, if living at the death of the Insured, as provided in paragraph 2, if not then living, with the Insured's daughter, SALLIE C. AILES, if then living, as provided in paragraph 3, if not then living, in a single sum in equal shares with such of said daughter's children as shall then be living.

2. A. The amount becoming due to said wife under paragraph 1 shall be applied under Option 1 of the Modes of Settlement at Maturity of Policy with interest payable monthly to said wife during her lifetime, except that on interest due dates said wife may elect to withdraw all of the amount then held under Option 1 or any part thereof but no partial withdrawal may be made for less than ONE HUNDRED DOLLARS.

B. In the event of the death of said wife prior to the thirtieth anniversary of the date of receipt by the Society of due proof of the death of the Insured, settlement of any amount held under Option 1, together with any interest accrued thereon, shall be made with the Insured's said daughter, if living at the death of said wife, as provided in paragraph 3, if not then living, in a single sum in equal shares with such of said daughter's children as shall then be living, should none then be living, with the executors or administrators of said wife.

C. In the event of the death of said wife on or after such thirtieth anniversary, any amount held under Option 1, together with any interest accrued thereon, shall be paid in a single sum to the Insured's said daughter, if living at the death of said wife, if not then living, in equal shares to such of said daughter's children as shall then be living, should none then be living, to the executors or administrators of said wife.

3. A. The amount becoming due to said daughter under paragraph 1 or 2.B. shall be applied under Option 1 with interest payable monthly to said daughter until the thirtieth anniversary of the date of receipt by the Society of due proof of the death of the Insured when the amount held under Option 1, together with any interest accrued thereon, shall be paid in a single sum to said daughter, except that on interest due dates said daughter may elect to withdraw all of the amount then held under Option 1 or any part thereof but no partial withdrawal may be made for less than ONE HUNDRED DOLLARS.

B. In the event of the death of said daughter, any amount held under Option 1, together with any interest accrued thereon, shall be paid in a single sum in

equal shares to such of said daughter's children as shall be living at the death of said daughter, should none then be living, to the executors or administrators of said daughter.

4. Payment of any sum withdrawable hereunder at the option of a beneficiary may be deferred by the Society for a period not exceeding six months after receipt of application therefor.

On October 13, 1953, the Equitable Life Assurance Society of the United States executed and sent to the decedent's surviving spouse a document entitled "Supplementary Contract No. 195063," as follows:

THE EQUITABLE LIFE ASSURANCE SOCIETY

of

The United States

HEREBY CERTIFIES THAT BY REASON OF THE DEATH OF JOHN J. CORNWELL the net proceeds of policies No. 2,518,331, 9,163,722 and 9,377,675 have become payable in accordance with the terms of the beneficiary provision of said policies, a photostatic copy of which provision is attached hereto.

Pursuant to said provision, the said net proceeds in the amount of $20,335.95 have been applied in accordance with paragraph 2 of said provision under Option 1 of the Modes of Settlement at Maturity provision of the said policies, a photostatic copy of which provision is attached hereto.

The first interest payment shall be payable to EDNA B. CORNWELL on October 28, 1953 and subsequent payments shall be made thereafter as provided in and subject to the terms of the said beneficiary and mode of settlement provisions.

PARTIAL WITHDRAWALS PROVIDED FOR UNDER THE TERMS OF THE SAID BENEFICIARY PROVISION MAY BE MADE WITHOUT EITHER THE SURRENDER OF THIS SUPPLEMENTARY CONTRACT OR ENDORSEMENT THEREON TO SHOW THE SAME.

All sums payable by the Society under this supplementary contract shall be payable at its Home Office in the City of New York.

Settlement with respect to the above is carried on the Society's records under Supplementary Contract No. 195063.

Executed at the Home Office of the Society in New York, this thirteenth day of October, 1953.

(Signed)   [Signature illegible],
*President.*

(Signed)   Henry G. Wood
*Secretary.*

(Signed)   [Signature illegible],
*Assistant Registrar.*

On June 22, 1954, the decedent's surviving spouse wrote to the Equitable Life Assurance Society of the United States, in part, as follows:

Under the provisions of Supplementary Contract No. 195063, which I enclose, I hereby request that you forward me at your earliest convenience a check for the entire amount due me under the contract.

Pursuant to this letter and in accordance with the terms of the "Beneficiary Provision" the proceeds of supplementary contract No.

195063 were paid to her in full on June 28, 1954, the next following interest due date.

On the estate tax return the amount of $26,500 was claimed as the allowable marital deduction, a portion of this amount being the proceeds of the insurance policies referred to above.

In the notice of deficiency respondent disallowed $20,504.35 of the claimed marital deduction, of which $20,335.95 was the proceeds of the insurance policies referred to above. It is admitted the remaining disallowance of the claimed marital deduction in the amount of $168.40 is proper.

The question here is whether the proceeds of the life insurance policies qualify for marital deduction. There are set forth in the margin pertinent provisions of section 812(e) of the Internal Revenue Code of 1939.[2]

---

[2] SEC. 812. NET ESTATE.

For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

\* \* \* \* \* \* \*

(e) BEQUESTS, ETC., TO SURVIVING SPOUSE.—

(1) ALLOWANCE OF MARITAL DEDUCTION.—

(A) In General.—An amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

(B) Life Estate or Other Terminable Interest.—Where, upon the lapse of time, upon the occurrence of an event or contingency, or upon the failure of an event or contingency to occur, such interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed with respect to such interest—

(i) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse) ; and

(ii) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse ; and no deduction shall be allowed with respect to such interest (even if such deduction is not disallowed under clauses (i) and (ii)—

(iii) if such interest is to be acquired for the surviving spouse, pursuant to directions of the decedent, by his executor or by the trustee of a trust.

For the purposes of this subparagraph, an interest shall not be considered as an interest which will terminate or fail merely because it is the ownership of a bond, note, or similar contractual obligation, the discharge of which would not have the effect of an annuity for life or for a term.

\* \* \* \* \* \* \*

(D) Interest of Spouse Conditional on Survival for Limited Period.—For the purposes of subparagraph (B) an interest passing to the surviving spouse shall not be considered as an interest which will terminate or fail upon the death of such spouse if—

(i) such death will cause a termination or failure of such interest only if it occurs within a period not exceeding six months after the decedent's death, or only if it occurs as a result of a common disaster resulting in the death of the decedent and the surviving spouse, or only if it occurs in the case of either such event; and

(ii) such termination or failure does not in fact occur.

\* \* \* \* \* \* \*

(G) Life Insurance or Annuity Payments with Power of Appointment in Surviving Spouse.—In the case of an interest in property passing from the decedent consisting of proceeds under a life insurance, endowment, or annuity contract, if under the terms of the contract such proceeds are payable in installments or are held by the insurer subject to an agreement to pay interest thereon (whether the proceeds, upon

Footnote continued on following page.

Both parties recognize that since there were secondary beneficiaries the surviving spouse was given a terminable interest in the insurance proceeds within the meaning of section 812(e)(1)(B). However, section 812(e)(1)(G) provides that a terminable interest in the proceeds of life insurance may qualify for the marital deduction if, amongst other circumstances, the surviving spouse has a power exercisable in favor of herself or her estate to appoint all amounts held by the insurer, which power is exercisable by the spouse alone and in all events. Respondent admits the right of withdrawal was a power to appoint and the right was exercisable by the widow alone. The sole question here is whether the widow's right of withdrawal of the proceeds of the three Equitable policies was "exercisable * * * in all events" within section 812(e)(1)(G).

Respondent's position is that the withdrawal right was not exercisable in all events for the widow's right of withdrawal did not "come into existence until 30 days after the receipt by the insurance company of due proof of the decedent's death which was a date which might or might not occur within 6 months of the decedent's death."

Respondent's regulations provide (Regs. 105, sec. 81.47a(d)) "the surviving spouse's power to appoint is 'exercisable in all events' only if it is in existence immediately following the decedent's death subject, however, to the operation of section 812(e)(1)(D)."

Respondent argues the widow's withdrawal rights, which he admits would be equivalent to a general power to appoint, did not come into existence immediately following the decedent's death. The argument is that, after the insured's death, the proof of death had to first be received by the insurance company and then there could be a waiting period of 30 days thereafter before it could be said there existed any right in the spouse to withdraw the insurance funds. We think the argument confuses existence of the power and compliance with reasonable settlement requirements for its exercise.

A requirement in the policy that proof of death be made before

---

the termination of any interest payments, are payable in a lump sum or in annual or more frequent installments), and such installment or interest payments are payable annually or at more frequent intervals, commencing not later than thirteen months after the decedent's death, and all amounts payable during the life of the surviving spouse are payable only to such spouse, and such spouse has the power to appoint all amounts payable under such contract (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), with no power in any other person to appoint to any person other than the surviving spouse any part of the amounts payable under such contract—

    (i) such proceeds shall, for the purposes of subparagraph (A), be considered as passing to the surviving spouse, and

    (ii) no part of such proceeds shall, for the purposes of subparagraph (B)(1), be considered as passing to any person other than the surviving spouse.

This subparagraph shall be applicable only if, under the terms of the contract, such power in the surviving spouse to appoint, whether exercisable by will or during life, is exercisable by such spouse alone and in all events.

settlement, is not a condition where compliance fixes the time of vesting of policy rights. Such a requirement is commonly inserted for the benefit of the insurer. The policy does not require any formal proof of death or that it be made within any specified time. It does not prescribe what the proof shall consist of but merely states insurer agrees to pay "upon receipt of due proof of death." The requirement is for the administrative convenience of the insurer and it exacts no more than that the fact of the death of the insured be made known to the insurer in some manner which is sufficiently trustworthy to put the insurer on inquiry to determine its liability.[3] Compliance with the proof of death requirement did not bring into existence the wife's rights to withdraw the insurance proceeds. Those rights existed from the moment of the insured's death by virtue of the clause providing settlement was to be made with the wife if living at the time of insured's death.

In *Eggleston* v. *Dudley*, 257 F. 2d 398, the policy involved provided that upon receipt of due proof of insured's death by the insurance company "settlement" should be made to the widow. With respect to these clauses the court said:

These provisions certainly do not mean and cannot be construed to mean that the widow did not become entitled to the proceeds of the policies upon the death of her husband but only that she could not receive the proceeds by way of settlement until due proof had been received by the company.

Respondent's regulations (Regs. 105, sec. 81.47a(d)) recognize that "Where the power is exercisable from the moment of the decedent's death, the contract is not disqualified merely because the insurer may require proof of the decedent's death as a condition to making payment to the appointee." We think that is the situation here. Widow's right to withdraw was exercisable from the moment of the insured's death under the first clause which provided settlement was to be with her if she were then living. The fact that the exercise of that right might entail compliance with insurer's requirements, provided for its administrative convenience as to notice and proof of death, does not mean the right to exercise the withdrawal right was deferred to a period beyond the moment of insured's death.

It is also true that the policy required the election to withdraw the funds, equivalent to a general power of appointment, had to be made on a monthly interest paying date beginning 30 days after receipt of the proof of death. This, too, is nothing more than a formal requirement such as is recognized as a nondisqualifying "formal limitation" in Regs. 105, sec. 81.47a(c),[4] which provide, in part, as follows:

[3] 7 Couch, Cyc. of Ins. Law, sec. 1516; *Schell* v. *Metropolitan Life Ins. Co.*, 3 S.W. 2d 269 (Mo.).

[4] Regs. 105, sec. 81.47a(c), is made applicable to life insurance contracts by specific references in 81.47a(d).

If the power is in existence at all times following the decedent's death, limitations of a formal nature will not disqualify an interest. Examples of formal limitations on a power exercisable during life are requirements that an exercise must be in a particular form, that it must be filed with a trustee during the spouse's life, that reasonable notice must be given, or that reasonable intervals must elapse between successive partial exercises.

All that the widow had to do in order to exercise her right of withdrawal was file proof of death and 30 days thereafter file election to withdraw. Respondent, in his regulations (Regs. 105, sec. 81.47a (d)) recognizes these are not disqualifying conditions. The regulations state, in part:

A contract which otherwise requires the insurer to make annual or more frequent payments to the surviving spouse following the decedent's death will not be disqualified merely because the surviving spouse must comply with certain formalities in order to obtain the first payment.

The above-cited regulation goes on to list as an example of a nondisqualifying formality requiring "the surviving spouse to furnish proof of death before the first payment is made."

Respondent relies entirely on the only case cited in his brief: *Werbe's Estate* v. *United States*, 273 F. 2d 201 (C.A. 7). There the court reached an opposite conclusion on a marital deduction issue involving life insurance policies, one of which was issued by the same insurer as in this case where the withdrawal right was limited to an annual interest-paying date.

As we read the *Werbe* case the issue as to whether the widow's withdrawal rights came into existence immediately upon the death of insured, was not present. At least the conclusion there reached seems to be based upon a finding that the withdrawal rights were not exercisable in all events because of restrictions on withdrawals, after the withdrawal rights came into existence, such as limiting the number of withdrawals, limiting withdrawals to interest due dates and requiring 90 days' notice, and the insurer's rights to refuse withdrawals of small sums, and if it wished, to defer payment for a period of months after election to withdraw. In the instant case respondent makes no argument that restrictions as to withdrawals rendered the right to withdraw nonexercisable in all events. His entire argument is based upon the contention that the power to withdraw did not come into existence upon the death of the insured or upon the happening of a stated event (30 days after receipt of due proof of death) which must occur within 6 months. This issue was obviously not present in the *Werbe* case with respect to the Equitable policy there involved, as shown by the pertinent portions of the policy set forth in the opinion. The opinion also holds the option in the other policies "goes into effect on decease, not on receipt of proof of death." We do not con-

sider the *Werbe* case support for the argument advanced by respondent in the instant case.

We feel, upon consideration of respondent's regulations previously quoted (especially Regs. 105, sec. 81.47a(c)) and in the absence of any argument that the limitations and restrictions here present are disqualifying conditions, we are justified in assuming respondent does not question such restrictions would not prevent the withdrawal rights from being exercisable in all events, if the said rights existed immediately after insured's death. We hold they did so exist at said time.

We hold that the widow's withdrawal rights existed from the moment of the insured's death and were exercisable in all events and therefore the insurance proceeds qualify for the marital deduction. We do not reach the alternative argument presented by petitioner under section 812(e)(1)(D).

For the purpose of giving effect to adjustments not contested,

*Decision will be entered under Rule 50.*

Reviewed by the Court.